IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARLA S. WEAVER | * | |
| | * | |
| | * | Civil No. CCB-04-CV-656 |
| v. | * | |
| | * | |
| MARK D. SCHARTIGER | * | |
| t/a AMERICAN INSURANCE CENTER | * | |
| | * | |
| | * | |

*****

**MEMORANDUM**

This action arises out of the termination of the Agent Agreement between defendant Mark Schartiger, owner of American Insurance Center, and plaintiff Carla Weaver, former agent of the company. Ms. Weaver's Count I requests a declaratory judgment that the Agent Agreement could not be terminated unilaterally by either party. Count II requests that damages be awarded for breach of contract as a result of Ms. Weaver's unlawful dismissal by Mr. Schartiger, and also requests that Mr. Schartiger pay Ms. Weaver compensation due to her under the contract. Count III requests an accounting of all sums due to Ms. Weaver as commissions. In Count IV, plaintiff requests an injunction directing defendant to pay all sums due to plaintiff and enjoining him from selling American Insurance Center without complying with the terms of the Agent Agreement. For the reasons stated below, defendant's motion for partial summary judgment as to Counts I, II, and IV will be granted.

I.

Ms. Weaver began work for American Insurance Center in August of 2000. The parties agreed that Ms. Weaver would oversee the personal insurance portion of the business, and Mr.

Schartiger would oversee the company's commercial insurance business.  On January 23, 2001, the parties entered into a written agreement, titled "Agent Agreement," defining their relationship.  The Agent Agreement described Ms. Weaver's position with the company as that of a subcontractor, and stated that she would "provide whatever time she desires in the role of an independent insurance agent."  Def.'s Ex. A at 1.  The Agent Agreement also provided that "Schartiger is the owner of all policies produced directly by himself, or by Weaver, or by a collaboration of the two parties."  *Id*. at 2.  Ms. Weaver's compensation under the agreement was calculated as twenty-five percent of the agency's gross commissions.  *Id*. at 3.

In the event that Mr. Schartiger died or became disabled during the term of the agreement, the agreement gave Ms. Weaver the right to purchase the business from Mr. Schartiger's heirs.  *Id*. at 2.  In the event that the American Insurance Center was offered for sale during the agreement's duration, Ms. Weaver possessed the following options: transfer the business produced by her to another agency at a rate of half the annual commission percentage, receive twenty-five percent of the purchase price, or use her right of first refusal to purchase the agency in an amount equal to the amount offered by the third party.  *Id*. at 3.

Section 8 of the agreement states:

> **Termination:** Schartiger agrees that in the event of Weaver's departure from the agency, she will be compensated in the amount of fifty percent of the commission normally payable to Schartiger on business produced by her for a period of one year from the date of departure.  Such payments will be made on a monthly review of the company commission statements on policies that renewed during the prior month period.

*Id*. at 4.  Finally, the Agent Agreement stated that it shall be considered "continuous."  *Id*.  The parties were permitted to review the agreement annually, on September 1st of each year, and

modifications could then be made to the terms and agreements contained within the contract with the consent of both parties. *Id*.

Ms. Weaver claims that when she entered into the Agent Agreement with Mr. Schartiger it was with the intent that the agreement be a continuous, long-term contract that neither party could unilaterally terminate. She also believed that she had a vested interest in the agency. Ms. Weaver asserts that Mr. Schartiger told her the agreement was structured as it was because Ms. Weaver wanted a permanent interest in the business, but did not want to be liable for any expenses or debts of the business. Ms. Weaver claims that she invested substantial amounts of time in the company, and that she ran the Romney, MD office and the personal insurance business almost completely on her own.

In August of 2003, Ms. Weaver received a letter from Mr. Schartiger stating that he wished to discuss modifying the Agent Agreement. Ms. Weaver claims that Mr. Schartiger proposed incorporating the business, discontinuing the agreement, and making Ms. Weaver an employee. He also proposed fixing her salary and placing money in a fund from which bills would be paid; if there was any money left at the end of the year, Ms. Weaver would receive a bonus. Ms. Weaver claims that Mr. Schartiger wanted her to give up her interest in the business to become his employee and work for a fixed salary. In later negotiations, Mr. Schartiger offered to incorporate the business, offer her stock, and make her an employee of the corporation with a percentage of net profits at year end. On these terms, Ms. Weaver refused to agree to modify the terms of the agreement. Ms. Weaver explains that she was not willing to work for Mr. Schartiger, when they had agreed at the beginning of their relationship that she would be working with him. On February 9, 2004, Mr. Schartiger delivered a letter to Ms. Weaver

terminating the Agent Agreement.

II.

When a court assesses a motion for summary judgment in a case of contract interpretation, it must first look to the face of the contract. *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). "Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if 'susceptible of two reasonable interpretations.'" *Id.* (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)). If the court decides that the contract language at issue is unambiguous, then it may interpret the contract as a matter of law and grant summary judgment because "no interpretive facts are in genuine dispute." *Id.* *See also Calomiris v. Woods*, 727 A.2d 358, 363-64 (Md. 1999) (finding that when a court determines as a matter of law that contractual language is unambiguous extrinsic evidence is barred).

Ms. Weaver argues that the fact the Agent Agreement could only be modified by the mutual agreement of the parties indicated that it could also only be terminated by the mutual agreement of the parties. The agreement, however, references modifications to "the terms and agreements herein contained." The modifications contemplated, then, are to the conditions of the contract, not the existence of the contract itself. The duration of the contract is specifically designated as "continuous" by the contract's terms. Furthermore, the contract contemplates the possibility of termination, as Section 8 specifies Ms. Weaver's compensation in the event that she "departs" from the American Insurance Center.

Maryland courts have long held that if an employment contract does not specify the

duration of employment, employment is considered to be at will and may be terminated by either party.

> It is . . . well settled that no action will lie on the breach of a contract of employment unless there is a definite time fixed for the continuance of the employment. The reason for the rule is that the hiring would be one merely at will and could be terminated at the pleasure of either party.

*W., B. & A. R. R. Co., v. Moss*, 96 A. 273, 276 (Md. 1915).  *See also Porterfield v. Mascari II, Inc.*, 823 A.2d 590, 601-02 (Md. 2003) (finding that the "major premise" of the employment at-will doctrine "is that an employment contract is of indefinite duration, unless otherwise specified, and may be terminated legally at the pleasure of either party at any time");  *see also Goldman, Skeen & Walder, P.A. v. Cooper, Beckman & Tuerk, LLP*, 712 A.2d 1, 21-23 (Md. Ct. Spec. App. 1998) (holding that when the parties agree upon "indefinitely continuous performance" either party may terminate the contract, with or without the agreement of the other party).

Plaintiff cites the case of *Kiley v. First National Bank of Maryland* in support of her argument that the agreement could only be terminated with the consent of both parties. In addition to the fact that *Kiley* dealt with a contract between a bank and a customer, not an employment contract, the case actually supports a finding that the Agent Agreement provided for at will employment. Plaintiff cites the portion of the opinion that states: "Depending upon the intention of the parties, a contract, silent as to duration, may contemplate perpetual performance, performance for a reasonable time, or performance until the parties decide otherwise." 649 A.2d 1145, 1153 (Md. 1994). Plaintiff argues that her contract contemplated perpetual performance. The *Kiley* court, however, further stated that "if a continuing performance was anticipated, but

no specific time provision was stipulated in the contract, the contract contemplates performance for a reasonable time, and is usually terminable at any time by either party." *Id*.

Applying this law to the case at hand, Ms. Weaver's association with American Insurance Center must be considered at-will.[1]  The Agent Agreement does not provide a specific time period for Ms. Weaver's employment, nor does Ms. Weaver claim that the parties intended a specific time period to apply.  Rather, the contract says, and the parties agree, that Ms. Weaver's association with American Insurance Center was intended to be continuous, albeit the terms were to be reviewed at the option of the parties each year.  To the extent a "reasonable time" for performance is required, the three-year length of the relationship between the parties was sufficient.  *See Kiley*, 649 A.2d at 1153 (finding that a "lengthy period" of five years was a reasonable duration for a contract between a bank and a customer).  Under Maryland law this contract was terminable at the will of either party, and Mr. Schartiger exercised his option to end his association with Ms. Weaver when his attempt to modify the agreement's terms was not successful.

### III.

Ms. Weaver's second contention, that she possessed an ownership interest in American Insurance Center, also fails upon an examination of the language of the contract.  The contract refers to Ms. Weaver as an "independent contractor," not as an owner or partner.  The contract

---

[1] Even if the contract could be construed as a term contract for a year, renewable annually on September 1st as specified by the modifications clause, Ms. Weaver's association with the American Insurance Center would still be legally terminable at the end of each year if Mr. Schartiger chose not to renew the contract.  In this case, the parties do not dispute that Mr. Schartiger notified Ms. Weaver in a timely manner that he wished to modify the contract and, when the parties were unable to reach an agreement, he chose not to continue the contract.

also states that Mr. Schartiger is the owner of all business brought to the company, regardless of who procured the commission. Furthermore, Ms. Weaver was not responsible for any expenses or debts of the firm. The fact that Ms. Weaver's salary was based upon a percentage of the gross business done by the firm, rather than upon the volume of business she produced, does not alone demonstrate that Ms. Weaver possessed an ownership interest in the company. Rather, it shows only that her compensation was tied to the overall success of the company.

The fact that Ms. Weaver could elect to receive twenty-five percent of the sale price were the company to be sold could, in other circumstances, indicate that she possessed an ownership interest in the company. The contract also provided, however, that she possessed the right of first refusal to purchase the company for the same price offered by a third party. The fact that the contract specifies that Ms. Weaver would pay the same price as a third party to purchase the company indicates that she did not possess any ownership interest in the company. Viewed in light of the contract as a whole, then, the clause providing that Ms. Weaver could elect to receive twenty-five percent of the purchase price paid by a third party shows only that the parties intended to provide some security for Ms. Weaver in the event the company was sold. Ms. Weaver's subjective belief, no matter how genuine, that she possessed some ownership interest in the company simply does not comport with the objective language of the contract.

IV

The language of the Agent Agreement is clear and unambiguous. Any extrinsic evidence regarding the agreement is irrelevant, since its terms are plain. Ms. Weaver's association with the company was at will, and as such could be terminated at any time by either party. The Agent Agreement does not provide Ms. Weaver with any ownership interest in the company.

Accordingly, defendant's motion for partial summary judgment must be granted with regard to Counts I and IV, and the portion of Count II requesting damages for breach of contract. Ms. Weaver, however, is due all compensation guaranteed to her by Section 8 of the contract.[2]

A separate Order follows.

  March 23, 2007  　　　　　　　　　　　　　　　　  /s/  
           Date　　　　　　　　　　　　　　　　Catherine C. Blake  
                                              United States District Judge

---

[2] The pending motion to compel has been reviewed and, because it appears sufficient documentation has been provided to calculate the amount due Ms. Weaver under Section 8, the motion will be denied.